# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Estate of Wayne A. Jones
By Robert L. Jones and Bruce A. Jones,
Administrators of the Estate of Wayne A. Jones
Plaintiff Below, Petitioner

vs.)  No. 18-0927 (Berkeley County CC-02-2016-C-490)

The City of Martinsburg, West Virginia,
Pfc. Erik Herb, Pft. Daniel North,
Ptlm. William Staubs, Ptlm. Paul Lehman,
and Pft. Eric Neely,
Defendants Below, Respondents

And

In re Application of the Estate of Wayne A. Jones to
Empanel a Special Grand Jury to Consider a Complaint

No. 18-1045 (Berkeley County CC-02-2018-P-318)

**FILED**
**October 30, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner in these consolidated appeals, the Estate of Wayne A. Jones ("the Estate"), by counsel Paul G. Taylor, appeals various rulings rendered by the Circuit Court of Berkeley County.  In Appeal No. 18-0927, the Estate, which is the plaintiff below, challenges an order entered on August 2, 2018, that dismissed the Estate's civil action under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[1]  The respondents, who are the defendants below, the City of Martinsburg, West Virginia ("Martinsburg") and Pfc. Erik Herb, Pft. Daniel North, Ptlm. William Staubs, Ptlm. Paul Lehman, and Pft. Eric Neely

---

[1] The Estate additionally appeals an order entered on September 19, 2018, that denied the Estate's motion, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, to vacate the order of August 2, 2018.  However, we decline to address the Estate's challenges to this order.  *See infra* note 26.

1

("the Officers"), by counsel, Joseph L. Caltrider, argue that the circuit court did not err in dismissing the case on various grounds.

In Appeal No. 18-1045, the Estate, which is the petitioner below, by counsel Paul G. Taylor, appeals three orders entered by the circuit court: an order entered on September 18, 2018, that granted a motion by the Officers to intervene in this action; an order entered on October 22, 2018, that denied the Estate's petition for disclosure of grand jury proceedings; and an order entered on October 23, 2018, that denied the Estate's application to empanel a special grand jury. The Berkeley County Prosecuting Attorney, Catie Wilkes Delligatti ("the Prosecuting Attorney"), as a self-represented litigant, and the Officers, by counsel Joseph L. Caltrider, who are the respondents below, contend that all three orders should be affirmed.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review and the applicable law, we find no substantial question of law has been presented nor is there prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders in both appeals is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

These two cases arise from the same underlying incident; however, the procedural history and issues raised for each case are different. Accordingly, we first briefly set out the factual history that is the same for both cases. We then treat each case separately, recounting the procedural history and addressing the issues properly raised for the first case before addressing the same for the second case. To this end, we note that, generally,

> [i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). Where more specific standards for our review apply to our consideration of specific rulings by the circuit court, we will reference them in conjunction with the issues to which they pertain.

These consolidated cases were filed in relation to the death of Wayne A. Jones ("Mr. Jones"), a homeless, fifty-year-old black man who suffered from mental illness. The facts available from the briefs are scant, and unnecessary to our resolution of the questions of law raised in these appeals. However, additional details have been gleaned from an order

2

issued in parallel federal litigation;[2] thus, we provide an abbreviated, but more complete, background. On the night of March 13, 2013, in Martinsburg, West Virginia, Mr. Jones was observed by Officer Paul Lehman ("Officer Lehman"), of the Martinsburg City Police Department, walking in the street in violation of a Martinsburg ordinance. Officer Lehman approached Mr. Jones, and, after a brief discussion about whether Mr. Jones had a weapon, Mr. Jones indicated that he had "something." Officer Lehman then repeatedly ordered Mr. Jones to place his hands on Officer Lehman's vehicle. Mr. Jones did not comply, but instead distanced himself from Officer Lehman, which prompted Officer Lehman to call for backup. Officer Daniel North ("Officer North"), also from the Martinsburg City Police Department, then arrived at the scene. The encounter with Mr. Jones continued, and Officer North twice deployed a taser on Mr. Jones, which apparently had little effect. At some point, Mr. Jones ran for about a block. Officers Lehman and North pursued him on foot and called for additional backup. When Officer North caught up with Mr. Jones, he ordered Mr. Jones to get on the ground. Mr. Jones remained uncooperative, and Officer North struck Mr. Jones in the neck. By this time Officer William Staubs ("Officer Staubs"), another Martinsburg City Police Department officer, had arrived on the scene and also ordered Mr. Jones to get on the ground. Mr. Jones failed to comply, and Officers North and Staubs tried to grab him, which resulted in all three men falling to the ground. Then, Mr. Jones was tased a third time. Meanwhile, Officers Eric Neely and Erik Herb, also from the Martinsburg City Police Department, arrived at the scene and observed Mr. Jones resisting arrest. Mr. Jones was threatened with a fourth tasing if he did not stop resisting arrest. Mr. Jones continued to resist, and he was tased a fourth time.

While Officer Staubs and Mr. Jones were struggling on the ground, Officer Staubs felt a scratch on his hand, and then a sharp poke in his side. Officer Staubs observed a fixed blade knife in Mr. Jones's right hand. Apparently, however, no knife has been produced, and no explanation for its absence has been given. Officer Staubs then shouted "[h]e's got a knife; he's got a knife." The officers ordered Mr. Jones to drop the knife. Mr. Jones failed to comply, and the Officers then discharged their weapons at Mr. Jones firing twenty-two shots, all of which hit Mr. Jones.[3] Mr. Jones died at the scene.

In October 2013, Berkeley County Prosecuting Attorney Pamela Games-Neely presented the facts and circumstances of the shooting to a Berkeley County Grand Jury. The grand jury declined to indict the officers, returning a result of "not a true bill."

---

[2] *See Estate of Jones by Jones v. City of Martinsburg*, No. 3:13-CV-68, 2018 WL 4289325 (N.D.W. Va. Sept. 7, 2018), *aff'd in part, vacated in part, and remanded*, 961 F.3d 661 (4th Cir. 2020).

[3] According to an order by the United States District Court for the Northern District of West Virginia in parallel litigation, a dashboard camera showed that the shots were fired almost simultaneously and the duration of the shots was roughly two seconds. *See id.* at *2.

3

## A. Appeal No. 18-0927

Because the resolution of this case is tied to federal litigation involving Mr. Jones's death, we first review the procedural history of the federal litigation. By complaint filed June 13, 2013, ultimately followed by a second amended complaint filed on May 21, 2014, the Estate filed suit in the United States District Court for the Northern District of West Virginia ("District Court") against Martinsburg and the Officers (collectively "the Defendants"). The second amended complaint sought damages, injunctive relief, and declaratory relief arising from Mr. Jones's death.[4] The Defendants filed a series of requests for admissions pursuant to Rule 36 of the Federal Rules of Civil Procedure. The Estate failed to timely respond to the requests, and they were deemed admitted.[5] By order entered October 15, 2014, the District Court granted summary judgment in favor of the Defendants, based in significant part on those admissions attributed to the Estate. *See Estate of Jones by Jones v. City of Martinsburg, W. Va.*, No. 3:13-CV-68, 2014 WL 5305966 (N.D.W. Va. Oct. 15, 2014), *remanded* 655 F. App'x 948, 949 (4th Cir. 2016).

The Estate appealed this ruling to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), and the Fourth Circuit remanded the case to the District Court for "consideration of the discretionary factors in Rule 36(b) [of the Federal Rules of Civil Procedure] in determining whether to allow the withdrawal of the admissions." *Estate of Jones by Jones v. City of Martinsburg, W. Va.*, 655 F. App'x 948, 949 (4th Cir. 2016).[6] On remand, the District Court entered an order dated December 2, 2016, that denied the Estate's request to withdraw its admissions and held that its prior order granting summary judgment remained in full force and effect. *See Estate of Jones by Jones v. City of Martinsburg, W. Va.*, No. 3:13-CV-68, 2016 WL 10585014 (N.D.W. Va. Dec. 2, 2016), *aff'd in part, rev'd in part, and remanded*, 726 F. App'x 173 (4th Cir. 2018).

---

[4] More specifically, the complaint asserted the following claims: (1) 42 U.S.C. § 1983 excessive force against the Officers; (2) 42 U.S.C. § 1983 violation of Mr. Jones's family's rights against the Officers; (3) 42 U.S.C. § 1983 against Martinsburg; (4) negligence and wrongful death against the Officers; and (5) West Virginia Code § 61-6-21(b) & West Virginia Constitution, art. III, sections 3-6, excessive force against Martinsburg and the Officers.

[5] *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. . . .").

[6] *See* Fed. R. Civ. P. 36(b) (stating, in pertinent part, that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. . . .").

The Estate again appealed to the Fourth Circuit. By order entered on March 5, 2018, the Fourth Circuit affirmed the District Court's ruling that denied the Estate's request to withdraw its admissions, but reversed the award of summary judgment in favor of the Defendants finding that, "notwithstanding [the Estate's] admissions, we conclude that genuine issues of disputed material fact remain as to whether police officers used excessive force at the time they shot and killed Wayne A. Jones." *Estate of Jones by Jones v. City of Martinsburg, W. Va.*, 726 F. App'x 173, 174 (4th Cir. 2018). Therefore, the case was remanded for further proceedings only on the issue of excessive force, *i.e.*, the Estate's claims under 42 U.S.C. § 1983 against the Defendants. The District Court then scheduled the matter for trial on those claims. On July 6, 2018, the Defendants filed a motion for summary judgment in which they asserted qualified immunity and claimed that Martinsburg could not be held liable for the constitutional violations of its employees under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). By order entered on September 7, 2018, the District Court again granted summary judgment in favor of the Defendants. *See Estate of Jones by Jones v. Martinsburg, W. Va.*, No. 3:13-CV-68, 2018 WL 4289325 (N.D.W. Va. Sept. 7, 2018), *aff'd in part, vacated in part, and remanded*, 961 F.3d 611 (4th Cir. 2020).

The Estate appealed that order to the Fourth Circuit. On June 9, 2020, the Fourth Circuit issued a decision that affirmed the District Court's grant of summary judgment as to the Estate's *Monell* claim against Martinsburg but reversed and vacated the grant of summary judgment in favor of the Officers on qualified immunity grounds. *See Estate of Jones by Jones v. Martinsburg*, 961 F.3d 611 (4th Cir. 2020). The case was again remanded to the District Court. *Id.* By letter/motion dated August 6, 2020, this Court was notified that the parties had reached a settlement of all the Estate's civil claims for monetary damages against Martinsburg and the Officers following mediation in the Fourth Circuit. Accordingly, the parties were finalizing settlement documents and preparing a petition for settlement approval to be submitted to the District Court.[7]

Meanwhile, during the pendency of its first appeal of the federal action, the Estate filed a complaint, on September 15, 2016, in the Circuit Court of Berkeley County, West Virginia, that also was based upon Mr. Jones's death. As with its federal action, the circuit court complaint named as defendants Martinsburg and the Officers. The Estate filed a "First Amended Complaint" on July 20, 2017, in which the State Board of Risk and Insurance Management ("BRIM") was added as a defendant. In this amended complaint,

---

[7] As of the filing of this memorandum decision, it does not appear that the settlement has been approved by the district court.

the Estate asserted the following claims: (1) "Intentional Homicide";[8] (2) Negligence;[9] (3) "Constitutional Violations";[10] (4) "Violations of Statute";[11] and (5) "Wrongful Death." The complaint additionally sought injunctive relief against BRIM, the appointment of a commissioner to investigate and review the Martinsburg Police Department, the appointment of a special prosecutor to review the facts and circumstances surrounding the death of Mr. Jones, and the appointment of a grand jury advocate "to enhance the independence of the grand jury."

On August 21, 2017, the Defendants filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. The Defendants asserted that the state action duplicated the Estate's federal action that was, at that time, before the Fourth Circuit on the Estate's second appeal of the District Court's order granting summary judgment. The Estate filed its response in opposition to the 12(b)(6) motion on September 15, 2017, and then filed a motion seeking additional discovery on September 18, 2017, followed by a request for production of documents and interrogatories on September 19, 2017. Also on September 19, 2017, the Estate filed a petition for disclosure of grand jury proceedings. A second request for the production of documents and interrogatories was filed by the Estate on September 21, 2017.

A hearing addressing the Estate's request for disclosure of grand jury proceedings was held before the circuit court on October 12, 2017.[12] In an order resulting from this hearing,[13] the circuit court stayed all proceedings in the case pending resolution of the Estate's second appeal to the Fourth Circuit in its federal litigation, and allowed discovery to proceed in the circuit court case only by agreement of the parties. In addition, the circuit

---

[8] The Estate claimed the homicide was malicious, wanton, and reckless, and asserted that Martinsburg owed a special duty to Mr. Jones.

[9] With respect to negligence, the Estate asserted "Negligent Management, Nonfeasance, Misfeasance" on the part of Martinsburg. The complaint also asserted "Negligence of Mayor and City Council," although neither the mayor nor city council was named as a defendant.

[10] The complaint identified Article III, section 3 of the West Virginia Constitution as the basis for its constitutional claim.

[11] No specific statutory violation was identified; instead, the complaint merely states that "[n]umerous statutes have been violated by the defendants."

[12] There is no transcript of this hearing in the appendix record filed in this Court.

[13] The order was entered on January 17, 2018.

6

court denied the Estate's motion for disclosure of the grand jury proceedings based upon the standards set out in *Cruse v. Blackburn*, No. CV 3:17-00485, 2017 WL 3065217 (S.D.W. Va. July 19, 2017). Finally, the order acknowledged that the State had provided the Estate with a resume for an expert witness pursuant to a FOIA request made by the Estate.

Following the Fourth Circuit's decision of the Estate's second appeal,[14] the circuit court conducted a status hearing.[15] By subsequent order,[16] the court noted that the Estate "acknowledged some 'overlap'" between this case and the District Court case. Accordingly, the circuit court directed the Estate to file a statement that fully identified the claims being prosecuted in the District Court as well as the claims being prosecuted before the circuit court. The circuit court additionally directed the parties to file updated briefs and proposed orders addressing the Defendants' motion to dismiss. Finally, the circuit court scheduled a hearing for July 24, 2018, and ruled that the case remain stayed until resolution of the Defendants' motion to dismiss.

Thereafter, the Estate filed its "Plaintiffs' [sic] Statement of Claims," in which it identified the following claims as being asserted in the circuit court: violation of a special duty; negligent management, nonfeasance, misfeasance; negligence of the Martinsburg mayor and city council; constitutional violations; injunction against Martinsburg's insurer; violations of statute; wrongful death; appointment of a commissioner; appointment of a special prosecutor; and appointment of a grand jury advocate. The Estate additionally identified the claims asserted in its litigation before the District Court: 42 U.S.C. § 1983 violation of Mr. Jones's civil rights by the Officers; 42 U.S.C. § 1983 violation of civil rights of Jones family by the Officers; 42 U.S.C. § 1983 violation of civil rights by Martinsburg; negligence and wrongful death by the Officers; and violation of West Virginia Code § 61-2-21(b) by the Officers.

The parties filed their updated briefs addressing the Defendants' motion to dismiss, and, on July 24, 2018, the circuit court held a hearing on the motion.[17] Following the hearing, by order entered on August 2, 2018, the circuit court granted the Defendants'

---

[14] This decision by the Fourth Circuit affirmed the District Court's denial of the Estate's request to withdraw its admissions, but reversed the District Court's award of summary judgment, finding issues of disputed material fact as to whether the Officers had used excessive force, *i.e.*, the Estate's § 1983 claims. *See Estate of Jones by Jones v. City of Martinsburg, W. Va.*, 726 F. App'x 173 (4th Cir. 2018).

[15] There is no transcript of this hearing in the appendix record filed in this Court.

[16] The order was entered on April 9, 2018.

[17] There is no transcript of this hearing in the appendix record filed in this Court.

motion to dismiss. This appeal followed and was consolidated with Appeal Number 18-1045 for purposes of our review.

The Estate raises several issues related to the circuit court's ruling granting the Defendants' motion to dismiss under West Virginia Rule of Civil Procedure 12(b)(6). These issues may fairly be addressed by resolving two questions. First, whether the circuit court erred in failing to convert the Defendants' motion to dismiss to a motion for summary judgment. Second, whether the circuit court erred in granting the motion to dismiss on the merits. In addressing these issues, we are mindful that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). Accordingly, we address the two issues in turn applying a plenary review.

Attached to the Defendants' 12(b)(6) motion were more than twelve exhibits.[18] The Estate contends that, because of these exhibits, the motion should have been converted to a motion for summary judgment.[19] The Defendants argue that the circuit court's

_____

[18] All the exhibits were not included in the appendix record. However, the following exhibits that were attached to the Defendants' 12(b)(6) motion were included: the Estate's complaint filed in the District Court on June 13, 2013, and attachments that were filed along with it; the Estate's Second Amended Complaint, filed in the District Court on May 21, 2014, and attachments that were filed along with it; the District Court's order of October 15, 2014, granting summary judgment to the Defendants; the Estate's Complaint filed in the circuit court on September 15, 2016; the District Court's order of December 2, 2016, denying withdrawal of admissions; the Estate's First Amended Complaint filed in the circuit court on July 20, 2017; a notice of attorney appearance filed in the District Court; an order of the circuit court entered on March 9, 2015, granting in part and denying in part Martinsburg's motion to dismiss; a copy of a press release issued by the United States Department of Justice; correspondence from counsel for Martinsburg to counsel for the Estate asking the Estate to voluntarily dismiss the case or risk a motion for sanctions under Rule 11 of the West Virginia Rules of Civil Procedure; a copy of the Estate's motion for an extension of time to serve the Defendants with a summons and complaint; and the circuit court's order granting the motion for an extension of time.

[19] The Estate identifies only three particular exhibits as being improperly considered by the circuit court: Exhibit I (which included a copy of a press release issued by the United States Department of Justice announcing that federal officials had closed their review into the death of Mr. Jones); Exhibit J (which was correspondence from counsel for Martinsburg to counsel for the Estate asking the Estate to voluntarily dismiss the case or risk a motion for Rule 11 sanctions); and Exhibit K (a copy of the Estate's motion seeking from the circuit court an extension of time to serve the Defendants with their summons and complaint). However, the Estate fails to direct this Court to any portion of the record or the circuit court's order to demonstrate how the circuit court improperly relied on these

consideration of exhibits relating to parallel litigation was proper and did not require such a conversion.

The general rule is that "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment . . . ." Syl. pt. 3, in part, *Riffle v. C.J. Hughes Constr. Co.*, 226 W. Va. 581, 703 S.E.2d 552 (2010) (quotations and citations omitted). However, exceptions to this general rule have been recognized. Certain matters outside the pleadings may be considered in connection with a motion to dismiss under Rule 12(b)(6) without converting it to a summary judgment motion.

Relevant to the instant matter, "Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice." *Forshey v. Jackson*, 222 W. Va. 743, 747, 671 S.E.2d 748, 752 (2008) (quotations and citations omitted). *See also Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) ("[W]e are mindful that we may consider not only the complaint but also matters fairly incorporated within it *and matters susceptible to judicial notice* without converting the motion to dismiss into a motion for summary judgment." (internal quotations and citation omitted) (emphasis added)). Orders and other matters of record in court proceedings are subject to judicial notice. *See Sturm v. Bd. of Educ. of Kanawha Cty.*, 223 W. Va. 277, 284 n.9, 672 S.E.2d 606, 613 n.9 (2008) (disagreeing with appellants' assertion that motion to dismiss should have been treated as motion for summary judgment where circuit court considered federal court's order dismissing appellant's federal claim, and observing that "a trial court can take notice of a prior case without having to convert the motion to dismiss into one for summary judgment"). *See also Kourtis v. Cameron*, 419 F.3d 989, 994 n.2 (9th Cir. 2005) (recognizing that "court records from related proceedings can be taken into account without converting a motion to dismiss into a summary judgment motion"), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008); *Shaw v. Hahn*, 56 F.3d

particular exhibits. We direct counsel's attention to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that the petitioner's brief contain, among other things,

> an argument exhibiting clearly the *points of fact* and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument *must contain appropriate and specific citations to the record on appeal*, *including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal*. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added).

1128, 1129 n.1 (9th Cir. 1995) (observing that "[i]n deciding whether to dismiss a claim under Fed. R. Civ. P. 12(b)(6), a court may look beyond the plaintiff's complaint to matters of public record").

In granting the motion to dismiss in this case, the circuit court indicated that the only exhibits it relied upon were "pleadings and orders from the [Estate's] District Court case, submitted to establish the fact of such parallel litigation." A careful reading of the circuit court's analysis demonstrates this to be true. Documents establishing the existence of the parallel litigation, the parties to that litigation, and the issues therein raised were necessary to determine whether the circuit court action was barred by res judicata or claim splitting. Thus, the exhibits pertaining to the parallel federal litigation were properly considered by the circuit court in ruling on the motion to dismiss under Rule 12(b)(6) without converting it into a motion for summary judgment.

We observe that the circuit court's order granting the Officers' motion to dismiss does cite to numerous additional exhibits in setting out the factual background of the case, but the circuit court did not rely on those documents as the legal basis for granting the motion to dismiss. Such a use of exhibits does not require the circuit court to convert a motion to dismiss into a motion for summary judgment. *See Knighton v. Merscorp Inc.*, 304 F. App'x 285, 287 (5th Cir. 2008) (finding no need to convert a motion to dismiss into a motion for summary judgment where the judge showed no legal reliance on the information, but, rather, "only referenced information outside of the pleadings in the section of her opinion providing background"); *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (concluding that, where "the court simply refers to supplementary materials, but does not rely on them or use them as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary judgment"), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). *Accord* Louis J. Palmer, Jr. & Robin J. Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)[8][g], at 418 (5th ed. 2017).

Finally, additional exhibits attached to the motion to dismiss that were not even acknowledged by the circuit court do not require the motion to be converted to a summary judgment motion. Rule 12(b) allows a court to exclude matters outside the pleadings. According to paragraph (b)(7) of the rule,

[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

10

W. Va. R. Civ. P. 12(b)(7) (emphasis added). Thus, "[t]he mere fact that documents are attached to a Rule 12(b)(6) motion to dismiss does not require converting the motion to a Rule 56 motion for summary judgment." Palmer & Davis, *Litigation Handbook* § 12(b)[8][g], at 417. This is because courts deciding whether a motion to dismiss should be converted to a motion for summary judgment "have broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir.1998).[20] *See also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 159 (3d ed. 2004) ("As the language of the rule suggests, . . . courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it *or simply not consider it*." (emphasis added)).

In other words, simply because "the parties provided documents to the . . . court did not require the . . . court to rely on those documents." *Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1341-42 (10th Cir. 2000). *See also* Palmer & Davis, *Litigation Handbook* § 12(b)[8][g], at 418 (observing that "as long as a court does not rely on extraneous documents, even though the documents may have been read, a court is not required to convert a Rule 12(b)(6) motion to a Rule 56 motion"). Any improper exhibits that were not considered by the circuit court do not require converting a motion to dismiss into a motion for summary judgment. Based upon the foregoing analysis, we find the circuit court did not err in ruling on the motion to dismiss without converting it to a motion for summary judgment.

Turning to whether the circuit court erred in granting the 12(b)(6) motion on the merits, we acknowledge that "[t]he purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* is to test the sufficiency of the complaint." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007). In testing such sufficiency, "'[c]omplaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure.'" *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 227, 488 S.E.2d 901, 907 (1997) (quoting *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. at 776, 461 S.E.2d at 522). Also, "[f]or purposes of the motion to dismiss, the complaint is construed

---

[20] It has long been the practice of this Court to rely on federal cases to interpret the West Virginia Rules of Civil Procedure. We have explained that, "[b]ecause the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules." *Keplinger v. Va. Elec. & Power Co.*, 208 W. Va. 11, 20 n.13, 537 S.E.2d 632, 641 n.13 (2000). *See also Painter v. Peavy*, 192 W. Va. 189, 192 n.6, 451 S.E.2d 755, 758 n.6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases . . . in determining the meaning and scope of our rules.").

in the light most favorable to [the] plaintiff, and its allegations are to be taken as true." *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978). Furthermore, we are guided by the principles that,

> [g]enerally, a motion to dismiss should be granted only where "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59, 65 (1984)) (additional citation omitted). For this reason, motions to dismiss are viewed with disfavor, and we counsel lower courts to rarely grant such motions. *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605-06, 245 S.E.2d 157, 159 (1978).

*Ewing v. Bd. of Educ. of Summers Cnty.*, 202 W. Va. 228, 235, 503 S.E.2d 541, 548 (1998). Finally, we note that

> [t]he circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief." Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977), *citing Conley* [*v. Gibson*], 355 U.S. [41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)].

*Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. at 776, 461 S.E.2d at 522 (footnote omitted).

The circuit court granted the Defendants' motion to dismiss the Estate's various claims based upon the following grounds. First, the circuit court found the Estate's claims of negligence and wrongful death were barred by the statute of limitations. In the alternative, the circuit court found that the negligence and wrongful death claims, along with the Estate's claims based upon statutory and constitutional violations, were barred by the doctrine of claim splitting.[21] The circuit court additionally determined there was no private right of action for the Estate's statutory and constitutional claims. Finally, the

---

[21] As mentioned previously, following mediation in the Fourth Circuit, the parties reached a settlement as to all the Estate's civil claims for monetary damages against Martinsburg and the Officers. This settlement, once final, will render moot the portion of this appeal related to the circuit court's dismissal of the Estate's civil claims for monetary damages that were raised in that court. However, because the District Court has not yet approved the settlement, we will address whether the circuit court erred in granting the Defendants' motion to dismiss as to those claims.

12

circuit court concluded that the Estate's claims for equitable relief are not actionable under West Virginia law.

The Estate argues that the circuit court erred in finding its claims of negligence, wrongful death, and statutory and constitutional violations were barred by the doctrine of claim splitting. The Defendants argue that the circuit court's determination was correct. We agree with the Defendants.

"The courts generally hold that a single or entire cause of action may not be divided or split so as to make it the subject of several actions, without the express or implied consent of the person against whom the cause of action exists." *Gary Steel Prods. Corp. v. Kitchin*, 90 S.E.2d 120, 122 (Va. 1955). Thus, "[l]ike res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action.'" *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 239 W. Va. 549, 561, 803 S.E.2d 519, 531 (2017) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006)). *Cf.* Syl. pt. 1, in part, *State Farm Mut. Auto. Ins. Co. v. De Wees*, 143 W. Va. 75, 101 S.E.2d 273 (1957) ("'[D]amages resulting from a single tort suffered by one person, consisting partly of property damages and partly personal injury damages, are the subject of only one action against a tort-feasor.'" (quoting Syl. pt. 1, *Mills v. DeWees*, 141 W. Va. 782, 93 S.E.2d 484 (1956))).

> The rule against claim-splitting is founded on the premise that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits. Accordingly, a pleading that states the violation of one primary right in two causes of action contravenes the rule against splitting a cause of action.

1 Am. Jur. 2d *Actions* § 99, at 908 (2016) (footnote omitted). This Court has similarly explained that

> "[i]t is authoritatively said, and we agree, that the existence of only one cause of action benefits both plaintiff and defendant. It frees the plaintiff of delay and burdensome expense and relieves the defendant of the injustice of being subjected to more than one suit for a single tort. Furthermore, the rule is in harmony with public policy and the tendency toward simplicity and directness in the determination of controversial rights and the elimination of multiplicity of suits."

*Hairston v. Gen. Pipeline Constr., Inc.*, 226 W. Va. 663, 675, 704 S.E.2d 663, 675 (2010) (quoting *Warner v. Hedrick*, 147 W. Va. 262, 268, 126 S.E.2d 371, 374-75 (1962)). *See also* 1A C.J.S. *Actions* § 210, at 508-09 (2016) ("The rule against splitting a cause of action is for the protection of the defendant, and serves to prevent a multiplicity of suits and

appeals with respect to a single cause of action. It is designed to promote fairness to the parties by protecting defendants against fragmented, harassing, vexatious, and costly litigation, and the possibility of conflicting outcomes." (footnotes omitted)).

Accordingly,

> [t]he law against splitting causes of action mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all; stated differently, the rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action. Thus, a cause of action against a tortfeasor cannot be made the subject of separate suits . . . .

1 Am. Jur. 2d *Actions* § 110, at 916 (footnotes omitted).[22] "To determine whether a plaintiff is claim-splitting, as would support dismissal, the proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis." 1 Am. Jur. 2d *Actions* § 99, at 908.

Under our law of res judicata,

> [b]efore the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W. Va. 469, 498 S.E.2d 41 (1997).

Applying the res judicata elements to the instant action, we find that all three have been met. First, for purposes of our analysis of claim splitting, we assume the District

---

[22] *See, e.g.*, *Robbins v. Gen. Motors De Mexico, S. DE R.L. DE CV.*, 816 F. Supp. 2d 1261, 1263 (M.D. Fla. 2011) (acknowledging that, under Florida law, "the rule against splitting causes of action [is] an aspect of the doctrine of res judicata. . . . [A]s a general rule the law mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all. . . . Stated differently, [t]he rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." (internal quotations and citations omitted)).

14

Court suit is final. Second, the parties to the two actions are the same in that the Officers and Martinsburg are named as defendants in both actions. Finally, the causes of action identified by the circuit court as being barred as a result of claim splitting are identical to causes of action raised in the District Court action, *i.e.*, the Estate raised claims of negligence, wrongful death, and statutory and constitutional violations in both actions. This Court has held that,

> `[f]or purposes of *res judicata* or claim preclusion, "a cause of action" is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. The test to determine if the issue or cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues. If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by *res judicata*.

Syl. pt. 4, *Slider v. State Farm Mut. Auto. Ins. Co.*, 210 W. Va. 476, 557 S.E.2d 883 (2001). In this case both the federal and state actions rely on the same evidence, which is evidence of the incident of March 13, 2013, that resulted in Mr. Jones's death and evidence related to the manner in which the Officers had been supervised and trained.[23] Accordingly, we find the circuit court did not err in granting the Defendants' motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure on grounds that the Estate has engaged in improper claim splitting.[24]

---

[23] The Estate additionally contends that its statutory claims were not presented in the federal case because they were not ripe at that time and involve incidents subsequent to the initial District Court filing. In support of this argument, the Estate asserts that the evidence to support its statutory claims would include the investigation of Mr. Jones's death, the presentation of the case to the grand jury, and purported efforts by Martinsburg to correct the alleged inadequacies in their officers' training, which are not part of its federal action. Assuming, arguendo, that these state claims would survive a finding of claim splitting, they simply were not alleged in the circuit court. An examination of the "First Amended Complaint" filed by the Estate in the circuit court reveals that no facts supporting these issues, nor the issues themselves, were pled.

[24] Because we find these claims were properly dismissed on grounds of claim splitting, we need not address the alternate ground of the statute of limitations that was relied upon by the circuit court. For the same reason, we need not address the circuit court's alternate ground for dismissing the Estate's statutory and constitutional claims, which was that there was no private right of action for those claims.

Finally, the Estate argues, in a rather confounding way, that it raised no claims for equitable relief and the circuit court improperly characterized certain of its claims as seeking equitable relief and improperly dismissed them on that basis. The claims identified by the Estate as being improperly dismissed as seeking equitable relief are its requests for: (1) an injunction against BRIM; (2) the appointment of a special commissioner to investigate the management and operations of the Martinsburg Police Department; (3) the appointment of a special prosecutor to review the death of Mr. Jones; and (4) the appointment of a grand jury advocate. In support of its argument, the Estate contends that there is but "one form of action to be known as 'civil action.'" W. Va. R. Civ. P. 2. First, the Estate misapprehends Rule 2 of the West Virginia Rules of Civil Procedure and the difference between an "action" and a "claim." Claims for *equitable relief* have not been abolished in West Virginia. *See, e.g.*, *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300, at *19 (W. Va. May 30, 2014) (memorandum decision) ("[A] West Virginia trial court is empowered by the principles of equity to grant equitable relief[.]"). Rule 2 merely establishes that there is no separate cause of action in equity by requiring that "[t]here shall be one form of action to be known as 'civil action[.]'" W. Va. R. Civ. P. 2. It has been explained that, "[b]y having only one form of action, the procedural distinctions between law and equity have been removed." Palmer & Davis, *Litigation Handbook* § 2[2], at 5. Thus, "[t]he practical effect of having only one form of action means that nearly all adversarial civil litigation, regardless of its previous form, must now be prosecuted under the rules of civil procedure." *Id.* Second, the Estate misinterprets the circuit court's ruling. While the circuit court did acknowledge that the Estate sought equitable relief, it did not dismiss these claims based upon that fact.[25] Instead, the circuit court treated the Estate's requests as a petition for writ of mandamus and found that the standards for mandamus were not met. Because the Estate has failed to challenge the grounds actually relied upon by the circuit court in dismissing its equitable claims, we affirm the circuit court's ruling.[26]

---

[25] In fact, the circuit court correctly characterized these claims as seeking equitable relief. *See* Black's Law Dictionary 1297 (7th ed. 1999) (defining "equitable remedy" as "[a] nonmonetary remedy, such as an injunction or specific performance, obtained when monetary damages cannot adequately redress the injury").

[26] Because we affirm the circuit court's dismissal of this action, we do not address assignments of error related to requests by the Estate for disclosure of evidence. In addition, we decline to address three assignments of error related to the Estate's motion to alter or amend judgment under Rule 59(e) of the West Virginia Rules of Civil Procedure, as we find these assignments fail to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure under which the petitioner's brief must contain

an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including

16

## B. *Appeal No. 18-1045*

This appeal arises from the Estate's application for a second grand jury presentation of Mr. Jones's death. On August 9, 2018, the Estate filed an application to empanel a special grand jury for consideration of the events surrounding Mr. Jones's death, despite the fact that the case previously was presented to a Berkeley County Grand Jury nearly five years earlier, in October 2013, and that grand jury returned a result of not a true bill. The Prosecuting Attorney filed her response in opposition to the application, apparently acting in accordance with an order of the circuit court directing her to file a response. The Estate, by separate petition in the same action, additionally sought the production of a transcript from the October 2013 grand jury proceedings. The prosecuting attorney also opposed the disclosure of the grand jury proceedings.

The Officers filed a motion to intervene in the action, and also filed a brief in opposition to the Estate's application to empanel a special grand jury. On September 13, 2018, the circuit court entered a scheduling order directing the Officers to provide a proposed order as to their motion to intervene and to serve a copy of the order on all non-moving parties. The scheduling order additionally directed the non-moving parties to file written responses to the motion and their own proposed orders within ten days of the entry of the court's scheduling order. However, contrary to this scheduling order, the circuit court entered its order granting the Officers' motion to intervene on September 18, 2018, before the Estate's response was due or had been filed. The Officers then filed their brief in opposition to the disclosure of the October 2013 grand jury proceedings.

---

citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

In these assignments of error, the Estate has failed to cite to relevant portions of the record, has failed to provide relevant authority, and has failed develop an argument establishing the complained of error. Although the Estate cites a few rules in connection with its conclusory assertion that it was entitled to a hearing on its Rule 59(e) motion, the Estate utterly fails to provide any explanation as to how these rules entitle it to the hearing sought. We often have cautioned that "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" *W. Va. Dep't of Health & Human Res., Child Advocate Office ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). *See also State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues [that] are . . . mentioned only in passing but [that] are not supported with pertinent authority, are not considered on appeal.").

On September 20, 2018, with respect to the Estate's request for a "special grand jury," the Estate filed its rebuttal to the Prosecuting Attorney's response. In its rebuttal, the Estate asked the court to either empanel a special grand jury or grant a hearing on its application. On that same day, the Estate filed a separate motion requesting a hearing on its motion to empanel a special grand jury.

Relative to the Estate's request for disclosure of the grand jury proceedings, the Estate filed its rebuttals to the Prosecuting Attorney's and the Officers' responses on September 28, 2018. The Estate asked the circuit court to order production of the requested transcript or, in the alternative, to grant the Estate a hearing on the matter. Also on September 28, 2018, the Estate filed a motion, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, asking the circuit court to alter or amend its order of September 18, 2018, which had granted the Officers' motion to intervene. By order entered on October 22, 2018, the circuit court denied the motion.

By separate order also entered on October 22, 2018, and without conducting a hearing, the circuit court denied the Estate's petition for disclosure of the grand jury transcript. In addition, by order entered on October 23, 2018, and also without a hearing, the circuit court denied the Estate's application to empanel a "special grand jury." This appeal of the circuit court's orders of September 18, 2018, granting the Officers' motion to intervene; October 22, 2018, denying the Estate's petition for disclosure of the grand jury transcript; and October 23, 2018, denying the Estate's application to empanel a "special grand jury," followed. The appeal was consolidated with Appeal Number 18-0927 for purposes of our review. We address three assignments of error raised by the Estate in this appeal.[27]

The Estate first argues that the circuit court erred and abused its discretion in denying the Estate's request for a "special grand jury" to hear a second presentation of the evidence surrounding the death of Mr. Jones. The Berkeley County Prosecuting Attorney and the Officers argue that the circuit court properly exercised its discretion to deny the request for a second grand jury presentation of the case.

---

[27] We find two of the Estate's alleged errors to be inadequately briefed. *See supra* note 26. In addition, two of the headings in the Estate's brief under the title "Assignments of Error" do not raise any error on the part of the circuit court and will not be addressed. In this regard, the Estate avers that "[t]here exists additional evidence that may be presented to a future grand jury," and "[t]he previous prosecuting attorney that handled the first grand jury proceeding was defeated in a re-election bid. The current prosecuting attorney, or a substitute prosecuting attorney, may have a different view of a special grand jury presentation."

We note that the Estate cites West Virginia Code §§ 52-2-1 and 52-2-14 for the proposition that a circuit court may empanel a "special grand jury." Although the estate references a "special grand jury," what it actually is seeking is for the circuit court to order that the matter be considered for a second time by a Berkeley County grand jury.

Our law is clear that a case may be presented to a grand jury more than once when a no true bill has been returned. "Although a bill of indictment be returned not a true bill, another bill of indictment against the same person for the same offense *may* be sent to and acted on by the same or another grand jury." W. Va. Code § 52-2-9 (emphasis added).[28] However, this statute has never been interpreted as providing a private citizen with an absolute right to present a complaint to a grand jury. Instead, a private person may present a complaint to a grand jury only upon application to a circuit judge. "By application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it. W. Va. Const. art. [III], § 17." Syl. pt. 1, *State ex rel. Miller v. Smith*, 168 W. Va. 745, 285 S.E.2d 500 (1981). Although a person's access to a grand jury was found by the *Miller* Court to derive from the open courts provision of article 3, section 17 of the West Virginia Constitution, the Court nevertheless found an application to the circuit court was required to obtain such access. This application process is necessary because "a circuit court has supervisory powers over grand jury proceedings to preserve the integrity of the grand jury process and to insure the proper administration of justice[.]" Syl. pt. 2, in part, *State ex rel. Hamstead v. Dostert*, 173 W. Va. 133, 313 S.E.2d 409 (1984). Thus, "[a] private citizen's right under West Virginia Constitution art. III, § 17 to present a complaint to the grand jury upon application to the circuit court is subject to reasonable limitations to protect our judicial system from abuse." Syl. pt. 8, *Dreyfuse In re Application to Present Complaint to Grand Jury*, ___ W. Va. ___, 842 S.E.2d 743 (2020).

The *Dreyfuse* Court set out the following standard to be met before a circuit court may deny a private citizen's application to present a complaint to a grand jury:

A circuit court may not deny a private citizen's application to present a complaint to the grand jury without a showing that the private citizen's conduct demonstrates a clear intention to obstruct the administration of justice. A circuit court's order denying a private citizen's application to

---

[28] Use of the term "may" in this statute signals that a subsequent grand jury presentation is discretionary. "As a general rule of statutory construction, the word 'may' inherently connotes discretion and should be read as conferring both permission and power. The Legislature's use of the word 'may' usually renders the referenced act discretionary, rather than mandatory, in nature." Syl. pt. 1, *Pioneer Pipe, Inc. v. Swain*, 237 W. Va. 722, 791 S.E.2d 168 (2016).

present a complaint to the grand jury must include such findings of fact and conclusions of law adequate for meaningful appellate review.

Syl. pt. 9, *id.* Unlike the instant matter, *Dreyfuse*, and other West Virginia cases addressing this issue, involved an application by a private citizen to present a complaint to a grand jury in the first instance. *See, e.g., id.* (seeking to present to grand jury, for first time, allegations of perjury by police officer and suborned perjury by prosecuting attorney in presentation of separate matter to grand jury); *State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994) (relating that private citizen presented claim of sexual abuse to grand jury due to prosecuting attorney's lack of presentation while awaiting additional evidence); *State ex rel. Miller*, 168 W. Va. 745, 285 S.E.2d 500 (pursuing grand jury presentation after prosecuting attorney determined to not present the matter). Thus, the same level of concern over open access to the courts is not at issue here, since the incident has been considered by a grand jury.

Nevertheless, even applying the *Dreyfuse* standard we find the circuit court provided clear rationale for refusing the Estate's request based upon its intention to obstruct the administration of justice.[29] The circuit court explained:

> First, [the Estate] delayed nearly five years before making [its] request (October 2013 to August 2018). This delay is sufficient abuse of the grand jury process to deny [the] request.
>
> Second, [the Estate's] five-year delay is suspect because [the Officers] relied on the finality of the October 2013 grand jury's "no probable cause" determination to waive their Fifth Amendment privilege against self-incrimination and give deposition testimony to the [Estate] in [its] separate civil case. Thus, [the Estate] now improperly seek[s] to benefit from [its] own delay.
>
> Third, [the Estate's] five-year delay is also suspect because [it] waited until approximately two months before [its] October 23, 2018[,] civil trial to threaten [the Officers] with a second grand jury presentation and potential criminal charges. This threat would effectively prevent [the Officers] from testifying during [the Estate's] civil trial and defending both themselves and the City of Martinsburg against [the Estate's] civil claim. [The Officers] would be required to invoke their Fifth Amendment privilege against self-incrimination while the specter of a second grand jury presentation was

---

[29] Although the parties have settled their federal civil claims and are awaiting the District Court's approval of the same, we evaluate the circuit court's decision regarding the Estate's motives based upon the circumstances that existed at the time the request for a second grand jury presentation was made.

hanging over their heads. Thus, [the Estate] again improperly seek[s] to benefit from [its] own delay.

We conclude that the circuit court's decision was properly reasoned and was not an abuse of discretion.

> Only where we are left with a firm conviction that an error has been committed may we legitimately overturn a lower court's discretionary ruling.
>
>> Where the law commits a determination to a trial judge and his discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire to reach a different result, but by a firm conviction that an abuse of discretion has been committed.

*Covington v. Smith*, 213 W. Va. 309, 322-23, 582 S.E.2d 756, 769-70 (2003) (quotations and citation omitted).

The Estate next argues that the circuit court erred by denying its petition for disclosure of the grand jury proceedings held in October 2013, at which the evidence of Mr. Jones's death was presented. The Prosecuting Attorney and the Officers contend that the circuit court properly exercised its discretion by maintaining the secrecy of the grand jury proceedings. "'The decision to disclose grand jury minutes prior to trial is committed to the discretion of the trial judge.' *Bast v. United States*, 542 F.2d 893, 895 (4th Cir. 1976)[.]" *State v. Patrick S.*, No. 18-0522, 2019 WL 5692294, at *9 (W. Va. Nov. 4, 2019) (memorandum decision).

The secrecy of grand jury proceedings in West Virginia has long been protected. *See* Syl. pt. 4, in part, *State v. Wetzel*, 75 W. Va. 7, 83 S.E. 68 (1914) ("It is the policy of the law to preserve inviolate the secrecy of proceedings before the grand jury[.]"), *superseded by statute on other grounds as stated in State v. Curotz*, 142 W. Va. 45, 93 S.E.2d 519 (1956). The general rule of secrecy is now set out in Rule 6(e)(2) of the West Virginia Rules of Criminal Procedure as follows:

> A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the state, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

The Estate's request relies upon an exception to this rule that is set out in Rule 6(e)(3), under which "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may . . . be made: . . . when so directed by a court preliminarily to or in connection with a judicial proceeding[.]" W. Va. R. Crim. P. 6(e)(3)(C)(i). *Accord* W. Va. Code § 52-2-15(c)(2)(A).

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) contains a nearly identical provision. Thus, the circuit court properly relied on federal precedent to determine how to apply our state rule. *See Painter*, 192 W. Va. at 192 n.6, 451 S.E.2d at 758 n.6 ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases . . . in determining the meaning and scope of our rules.").

The United States Supreme Court has established that access to grand jury materials for the purpose of a civil suit is permissible only upon "the showing of particularized need." *U.S. v. Sells Eng'g, Inc.*, 463 U.S. 418, 420, 103 S. Ct. 3133, 3136, 77 L. Ed. 2d 743 (1983). The criteria for showing a particularized need was set out by the United States Supreme Court in *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979), and was applied by the circuit court in this case:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations[.]

*Id.* at 222, 99 S. Ct. at 1674, 60 L. Ed. 2d 156 (footnote omitted).[30] *See also Gilbert v. U.S.*, 203 F.3d 820 (table) (4th Cir. 2000) (unpublished disposition available at 2000 WL 20581) (applying *Douglas* test); *Cruse v. Blackburn*, No. CV 3:17-00485, 2017 WL 3065217, at *1 (S.D. W. Va. July 19, 2017) (same). Notably, this test uses the conjunctive "and" designating that all elements must be shown. *See Browning v. Hickman*, 235 W. Va. 640, 652, 776 S.E.2d 142, 154 (2015) (observing that "[t]he three factors . . . are joined with the conjunctive 'and,' meaning they all must be present . . . ." (quotations and citation omitted)); *Ooten v. Faerber*, 181 W. Va. 592, 597, 383 S.E.2d 774, 779 (1989) (noting that "'[a]nd' is a conjunction connecting words or phrases, expressing the idea that the latter is to be added to or taken along with the first").

---

[30] The *Douglas* Court further instructed that "in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." 441 U.S. at 222, 99 S. Ct. at 1674, 60 L. Ed. 2d 156.

22

Under the first *Douglas* factor, the Estate is required to show that the material sought is needed to avoid a possible injustice in another judicial proceeding. The circuit court found the Estate was unable to provide such evidence insofar as there was no other judicial proceeding pending. The Estate's state civil action had been dismissed, and its parallel federal litigation had been resolved by the award of summary judgment in favor of the Defendants. In this decision, we have affirmed the circuit court's dismissal of the state civil action, so that action is no longer a viable basis for disclosing the grand jury materials. However, following the circuit court's ruling on this issue, and as a result of multiple appeals to the Fourth Circuit, summary judgment as to the Estate's 42 U.S.C. § 1983 claims against the Officers was reversed, so the federal litigation remained active. The parties subsequently settled those claims, though, and are awaiting approval of that settlement from the District Court.[31] So it appears likely that there soon will be no other judicial proceeding for which the grand jury transcripts would be needed to avoid a possible injustice. Beyond simply establishing the existence of other litigation, though, the Estate must show that disclosure of the grand jury proceeding is needed to avoid a possible injustice in that litigation. To make this showing, the Estate has merely listed a series of generalized "injustices sought to be avoided," with no analysis or explanation establishing a particularized need for the grand jury materials in relation to its federal civil litigation.[32] Assuming for the sake of argument that the Estate's federal litigation remains active, such a generalized list is insufficient, particularly in light of the fact that the Officers waived their Fifth Amendment privilege against self-incrimination and gave deposition testimony to the Estate, which we presume has provided the Estate with the Officers' version of the events surrounding Mr. Jones's death. Accordingly, we find the Estate has failed to make a proper showing as to the first *Douglas* factor.

---

[31] *See supra* note 7 and accompanying text.

[32] The Estate simply asserts "[t]he injustices sought to be avoided in these pending cases by production of grand jury witness testimony and the presenting prosecutor's argument are several:"

> a) denial of the day in court due the Jones family; b) denial of a full, fair, true and neutral grand jury investigation of the underlying facts; c) court rulings made in a vacuum without all available evidence; d) suppression of full disclosure; d) the blunting of public confidence in the judicial process by a lack of transparency and full disclosure; e) the development by this appellate court of standards and guidance on the issues of empaneling a second grand jury and disclosure of prior grand jury testimony in civil proceedings; f) the inability to answer the questions of a potential second [grand] jury about proceedings before the first grand jury; and g) potential unpunished torts and crimes.

Likewise, the Estate has failed to show that its need for disclosure is greater than the need for continued secrecy. The circuit court found that the Estate failed to provide *any* specific need, but rather put forth unsubstantiated allegations of a cover-up. Before this Court, the Estate argues that its need for disclosure surpasses the need for grand jury secrecy for two reasons. First, the Estate complains that the Officers have used the grand jury's result of not a true bill as a shield to blunt the Estate's efforts to advance its cause. Second, the Estate argues that the Officers improperly provided testimony before the grand jury,[33] which the Estate characterizes as "a monumental denial of due process" and a "scam on the justice system." Neither of these assertions supplies adequate grounds to overcome the secrecy afforded to grand jury proceedings.

The result reached by the grand jury simply does not provide justification to overcome the longstanding policy of secrecy in grand jury proceedings. The Estate appears to misunderstand the proper role of a grand jury. "[T]he function of the grand jury . . . is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient probable cause to require the defendant to stand trial." *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 665, 383 S.E.2d 844, 847 (1989).

Furthermore, we recognize that "[c]ourts have generally held that a putative defendant and his counsel have no constitutional right to be present at and participate in grand jury proceedings." Syl. pt. 5, *State v. Miller*, 175 W. Va. 616, 336 S.E.2d 910 (1985). However, there is no impediment to a grand jury calling a target of its investigation to testify. *See, e.g.*, *U.S. v. Williston*, 862 F.3d 1023, 1027 (10th Cir. 2017) (addressing certain rights of grand jury witnesses, including "witnesses implicated in the criminal activities that the grand jury is investigating"); *Gilbert v. United States*, 203 F.3d 820 (unpublished disposition available at 2000 WL 20581, at *1) (acknowledging, in relation to an incident where the use of force by law enforcement officers had led to the hospitalization of an arrestee, that "a grand jury was investigating the incident and *receiving testimony from many of the officers involved*" (emphasis added)); *Greenfield v. N.J. Dep't of Corr.*, 382 N.J. Super. 254, 262, 888 A.2d 507, 511 (App. Div. 2006) (observing lack of rights available to "a target [who] is called as a witness by an investigating grand jury"). Thus, it was not improper for the Officers, as witnesses to the events under consideration, to provide testimony to the grand jury.

---

[33] The circuit court's order denying the Estate's petition for disclosure of grand jury proceedings includes a comment that "this Court will not sanction the disclosure of the prior grand jury testimony of the defendant officers and permit it to be scrutinized when the District [Court] has found that their actions occasioning said testimony is not subject to civil liability." The Prosecuting Attorney avers that this may have been a typographical error in the order. The Officers neither confirm nor deny that they testified before the grand jury. For purposes of our analysis, we will assume that the Officers provided such testimony.

Finally, the Estate has failed to structure its request to cover only material needed. The circuit court found that the Estate's request "is not structured in any manner whatsoever because the [p]etition seeks a transcript of the entire grand jury proceeding." Before this Court, the Estate claims that it modified its request and seeks "only the presentation and statements of the Prosecuting Attorney and all witnesses." This request incorporates nearly all of a grand jury proceeding.[34] We agree with the circuit court's finding that this request is in no way structured to cover only needed material. Simply put, "[t]he well-established policy of protecting the secrecy of grand jury proceedings is not overcome by [an] attempt to engage in a fishing expedition." *U.S. v. Eiland*, No. CRIM. 04-379(RCL), 2005 WL 3211808, at *5 (D.D.C. Oct. 26, 2005). Because the Estate has failed to establish a particularized need for the grand jury materials under the *Douglas* test, we conclude that the circuit court did not abuse its discretion by refusing the Estate's request for disclosure of the grand jury proceedings.

We lastly address the Estate's argument that the circuit court erred in granting the Officers' motion to intervene in the Estate's application seeking to present the circumstances of Mr. Jones's death to a grand jury for a second time. Although we already have affirmed the circuit court's denial of the Estate's application, we nevertheless address this issue to establish that the Estate was not prejudiced by the Officers' participation in the proceedings below.

The Officers sought to intervene as a matter of right under Rule 24(a)(2) of the West Virginia Rules of Civil Procedure and sought permissive intervention under Rule 24(b)(2). We resolve this issue based upon the Officers' motion to intervene as a matter of right.

We exercise plenary review of the circuit court's decision as to the merits of the Officers' motion to intervene as a matter of right. *See Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) ("Because it is undisputed that Jackson's motion to intervene was timely, we focus our analysis on the remaining three requirements for intervention as of right and apply de novo review."); *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019) ("We review . . . the grant of a motion to intervene as of right de novo[.]"). Furthermore, we note that "'[d]oubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action.'" *Stern v. Chemtall Inc.*, 217 W. Va. 329, 337, 617 S.E.2d 876, 884 (2005) (quoting *State ex rel. Ball v. Cummings*, 208 W. Va. 393, 403, 540 S.E.2d 917, 927 (1999)).

---

[34] According to the record, the Estate has clarified that it does not request "the identity of the grand jurors, the oath of the grand jurors, instructions to the grand jury, nor the result of the grand jury deliberations."

According to Rule 24(a)(2):

>  (a) *Intervention of right*. – Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Estate argues that that the Officers' motion to intervene should have been denied by the trial court under Syllabus point 5 of *State v. Miller*, 175 W. Va. 616, 336 S.E.2d 910, which holds, in part, that "a putative defendant and his counsel have no constitutional right to be present at and participate in grand jury proceedings." Insofar as this holding pertains to a putative defendant's right to participate in *grand jury proceedings*, and the instant action is not a grand jury proceeding, *Miller* has no application.

As to intervention of right, this Court has held that

>  West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties.

Syl. pt. 2, *State ex rel. Ball v. Cummings*, 208 W. Va. 393, 540 S.E.2d 917 (1999). There is no challenge to the timeliness of the Officers' motion to intervene. Therefore, we will review the remaining factors.

The second factor under a Rule 24(a)(2) analysis requires the Officers to have "an interest relating to the . . . transaction which is the subject of the action." Rule 24(a)(2).

>  To justify intervention of right under West Virginia Rule of Civil Procedure 24(a)(2), the interest claimed by the proposed intervenor must be direct and substantial. A direct interest is one of such immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment to be rendered between the original parties. A substantial interest is one that is capable of definition, protectable under some law, and specific to the intervenor. In determining the adequacy of the interest in a motion to intervene of right, courts should also give due regard to the efficient conduct of the litigation.

26

Syl. pt. 4, *Cummings*, 208 W. Va. 393, 540 S.E.2d 917.  The Officers submit that each of them was directly involved in the shooting incident of March 13, 2013, and, therefore, could be the subject of a criminal prosecution should Petitioners be permitted a second grand jury presentation.  Furthermore, at the time they moved to intervene, each officer was a defendant in the Estate's federal proceeding and would have been compelled to assert his Fifth Amendment privilege against self-incrimination and, thus, would effectively have been prevented from testifying while there was a potential for a second grand jury presentation.[35]  Based upon these assertions, we are satisfied that the Officers had an adequate interest relating to the Estate's action seeking a second presentation to a grand jury.

The next consideration is whether disposition of the Estate's action may, as a practical matter, impair or impede the Officers' ability to protect their interest.

> In determining whether a proposed intervenor of right under West Virginia Rule of Civil Procedure 24(a)(2) is so situated that the disposition of the action may impair or impede his or her ability to protect that interest, courts must first determine whether the proposed intervenor *may* be *practically* disadvantaged by the disposition of the action.  Courts then must weigh the degree of practical disadvantage against the interests of the plaintiff and defendant in conducting and concluding their action without undue complication and delay, and the general interest of the public in the efficient resolution of legal actions.

Syl. pt. 5, *id*.  The Officers assert that they were entitled to the opportunity to show why the Estate's request for a second grand jury presentation was unwarranted *before* being potentially subjected to the risk of an indictment, particularly where the Officers were, at the time, defendants in federal litigation brought against them by the Estate.  Renewed grand jury proceedings would have impeded their ability to defend themselves in that action.[36]  We agree that disposition of the Estate's request for a second grand jury presentation practically disadvantaged the Officers' ability to protect their interests in defending themselves in the Estate's federal litigation.  Furthermore, the Officers' participation in the circuit court proceeding did not unduly complicate the matter, and, considering the Estate waited nearly five years before requesting a second grand jury presentation, allowing the Officers to intervene did not cause any unreasonable delay.

---

[35] As previously noted, during the pendency of this appeal the parties settled their federal litigation.  They presently are waiting for the District Court's approval of the same.  *See supra* note 7 and accompanying text.

[36] *See supra* note 35 for a comment on the current status of the Estate's federal litigation.

The final consideration under *Cummings* requires the Officers to show that their interest would not be adequately represented by existing parties.

> In order to demonstrate inadequate representation under West Virginia Rule of Civil Procedure 24(a)(2), a private person seeking to intervene of right in a legal action in which a government agency represents the public interest generally must assert some specialized or private interest justifying intervention.

Syl. pt. 6, *id.* However, "the burden [of] showing inadequate representation is minimal, and . . . a liberal view toward allowing intervention should be followed." *Id.* at 403, 540 S.E.2d at 927. The Officers assert that the Estate is the only true party to this action, and the Estate certainly does not represent the Officers' interests. The Officers acknowledge that the Prosecuting Attorney, who, they contend, responded to this action according to an order of the circuit court, opposed the Estate's application. However, they argue that the Prosecuting Attorney's interests are different from their own. They explain that, as the constitutional officer charged with the responsibility of instituting prosecutions and securing convictions on behalf of the State, the Prosecuting Attorney is most interested in protecting the integrity of the grand jury and criminal justice processes. The Officers, on the other hand, are interested in the practical outcome of the Estate's petition, because it impacts whether they may be subjected to criminal charges and their ability to defend themselves in the Estate's federal litigation.[37] We find this to be a sufficient showing that the Officers' interests were not adequately represented by existing parties to this proceeding. Because the Officers have established all the elements for intervention by right, we find the circuit court did not err in granting their request to intervene.[38]

---

[37] *See supra* note 35 for a comment on the current status of the Estate's federal litigation.

[38] The Estate additionally argues that the circuit court erred by granting the Officers' motion to intervene before the scheduled deadline for the Estate's written response thereto, and before the Estate was able to file its response. However, because our review of the circuit court's ruling on the Officers' motion to intervene is de novo, and the Estate briefed its argument relating to the Officers' motion to intervene to this Court, we find, under the particular circumstances herein presented, any error resulting from the circuit court's premature ruling to be harmless.

Finally, the Estate argues that its "constitutional right of access to the court[s] guaranteed by [article III, section 17 of the Constitution of West Virginia] was denied by the circuit court's refusal of Petitioner's requests for hearings." The brief contains no analysis to support this conclusory assertion. Therefore, the issue will not be addressed. *See State v. Benny W.*, 242 W. Va. 618, ___, 837 S.E.2d 679, 694 (2019) ("The Petitioner has provided a 'skeletal' argument that is unsupported by legal analysis and pertinent

Having found no error, in Appeal Number 18-0927, we affirm the Circuit Court of Berkeley County's order of August 2, 2018, that dismissed the Estate's civil action under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Likewise, in Appeal Number 18-1045, we affirm the circuit court's orders of September 18, 2018, that granted a motion by the Officers to intervene in this action; October 22, 2018, that denied the Estate's petition for disclosure of grand jury proceedings; and October 23, 2018, that denied the Estate's application to empanel a special grand jury.

Appeal Number 18-0927: Affirmed.

Appeal Number 18-1045: Affirmed.

**ISSUED:  October 30, 2020**

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING AND WRITING SEPARATELY:**
Justice Margaret L. Workman

Workman, J., dissenting:[39]

---

authorities. We have held that 'a skeletal argument, really nothing more than an assertion, does not preserve a claim.' *State v. Fleming*, 237 W. Va. 44, 58, 784 S.E.2d 743, 757 (2016) (internal quotations and citations omitted).").

[39] Regarding the circuit's court's dismissal of the petitioner's first amended complaint pursuant to West Virginia Rule of Civil Procedure12(b), the majority includes a lengthy dissertation on the concept of claim-splitting and why it precludes a claimant from seeking civil damages in both state and federal court. I do not disagree with the law set forth in that discussion. However, it is largely unnecessary because the action for civil damages in federal court has been settled effectively terminating the issue of a civil claim in state court. *See* https://www.wboy.com/news/west-virginia/martinsburg-police-settle-lawsuit-with-wayne-jones-family-for-2013-killing/ (last visited October 20, 2020); *see also* Petitioner's Counsel's August 6, 2020, letter informing the Court that the parties had reached a settlement of all the Estate's civil claims for damages against Martinsburg and the police officers and the "settlement should moot those parts of Petitioners' appeal in Docket No. 18-0927 (Berkeley Co. Civil Action No. 16-C-490) which address civil claims for monetary damages." As such, I find no reason to concur.

I vehemently dissent to the majority's affirmance of the lower court's denial of the petitioner Estate's request for a second grand jury in the death of their decedent, Wayne A Jones.   The majority's decision is contrary to this Court's recent decision in *Dreyfuse, In re Application to Present Complaint to Grand Jury*, ___ W. Va. ____, 842 S.E.2d 743 (2020), which requires the circuit court to enter an order that includes findings of fact and conclusions of law sufficient for  meaningful appellate review. This case should have been remanded for proceedings consistent with *Dreyfuse*.

This case exemplifies an inherent flaw in our criminal justice system:  the failure of courts to recognize that the investigation and prosecution of alleged police officer misconduct may require the appointment of a special prosecutor and/or the empaneling of a special grand jury where there is inherent potential for a conflict of interest when a local prosecutor investigates local law enforcement personnel with whom she works and upon whom she depends on a regular basis.

Although the majority finds the underlying facts are "unnecessary to our resolution of the questions of law raised[,]" I believe that the underlying facts are so egregious that they merit full recitation. The facts, as fully developed in the federal civil action, follow.

Wayne A. Jones was a homeless, mentally ill,[40] black man, whose sole crime on the day he was killed was jaywalking in Martinsburg, West Virginia, on March 13, 2013, at 11:30 p.m.  Mr. Jones was initially stopped by Martinsburg police officers when he was reportedly observed by a police officer walking in the street, as opposed to the sidewalk, near downtown Martinsburg.  Officer Paul Lehman initiated the stop for jaywalking.   Officer Lehman asked Mr. Jones why he was walking in the street and then ordered Mr. Jones to produce his identification. *Estate of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 664 (4th Cir. 2020).  Mr. Jones replied that he did not have any identification.  Officer Lehman then asked Mr. Jones if he could search Mr. Jones for weapons, to which Mr. Jones responded, "What's a weapon?" *Id*. The encounter escalated after Mr. Jones "acknowledged that he did have 'something.'" *Id*.  Officer Lehman called for backup and directed Mr. Jones to place his hands on the patrol car.  Mr. Jones did not comply and tried to move away from the officer.  Officer Lehman again demanded that Mr. Jones put his hands on his patrol car, Mr. Jones responded, "'What are you trying to do?'; 'What do you want?'; and 'What did I do to you?'" *Id*.   In response to these queries, Officer Lehman pulled out his taser and discharged it on Mr. Jones. *Id*. Officer Daniel North, also with the Martinsburg Police Department, reached the scene at this time, and he too discharged his taser on Mr. Jones. *Id*.  Officer Lehman stated that Mr. Jones then "hit" him in the face in such a way that the officer's toboggan was pulled over his eyes.  *Id*.

---

[40] In the petitioner's reply brief, Mr. Jones is referred to as "a mentally ill, homeless man."

Mr. Jones broke away from the officers and ran down the street. Officer North pursued him on foot and was the first officer to apprehend him. Officer North indicated that Mr. Jones's hands were "'about to go up,'"[41] and the officer stated that "'he took that as [Mr. Jones] may try to assault him.'" *Id*. at 665. This action caused Officer North to strike Mr. Jones in the brachial. *Id*.

Officer William Staub, also with the Martinsburg Police Department, arrived at the scene and joined Officer North and Mr. Jones. According to Officer Staub, Mr. Jones had "'cornered himself'" in "'a stoop entrance to a bookstore, up a couple steps.'" *Id*. Officer North instructed Mr. Jones to get on the ground, and Mr. Jones responded, "'I didn't do anything wrong.'" *Id*. At that point, according to Officer Staub, Mr. Jones put his hands up; both Officers Staub and North grabbed Mr. Jones's hands, but the three of them stumbled down the stairs located off the bookstore entrance and Officer North was thrown away from Mr. Jones, while Officer Staub "'chipped'" a bone in his thumb. *Id*. Mr. Jones was then wrestled to the ground by Officer Staub, who put a "'choke hold'" on him. *Id*. "A loud choking or gurgling sound, which seems to be coming from [Mr.] Jones, is audible on [Officer] Staub's audio recorder at this time." *Id*.

Officer Staub and Officer North were then rejoined by Officer Lehman, as well as two additional Martinsburg police officers, Officers Eric Neely and Erik Herb, who had arrived on the scene. Mr. Jones was on the ground, face down, kicking. "One officer can be heard loudly calling [Mr.] Jones a 'motherf**cker.' At least one officer can be seen kicking [Mr.] Jones as he lay on the ground." *Id*. Officer Neely tased Mr. Jones a third time and Officer North used a "'drive stun without probes.'" *Id*. The officers reported these actions had no visible effect on Mr. Jones. Officer Staub still had Mr. Jones restrained in a choke hold, when he felt something poke him in his side. Officer Staub reported that he saw a fixed blade knife in Mr. Jones's hands and shouted to the other officers that Mr. Jones had a knife. *Id*. One of the officers called to "'Get back, get back!'" *Id*.

All the officers retreated from Mr. Jones approximately five feet. As the officers moved back, Mr. Jones's left arm "dropped lifelessly." *Id*. Mr. Jones remained on the ground, while the officers formed a semi-circle around him, and all five officers drew their guns. Mr. Jones was ordered to drop his weapon. Mr. Jones remained motionless with no verbal response to the officers. Thereafter, although Officer Lehman reported that Mr. Jones "'did not make any overt acts with the knife towards the other officers[,]'" *id*., all five officers collectively fired a total of twenty-two rounds from their respective weapons at Mr. Jones. Mr. Jones suffered twenty-three wounds, including approximately eleven in the back and buttocks, and was killed where he remained on the ground. Officer Staub's

---

[41] As the Fourth Circuit noted, "[u]nless he was clairvoyant, North could not have known that Jones's hands were 'about' to be raised." *Estate of Jones*, 961 F.3d at 664.

alleged injuries required no medical attention[42] and the reported knife that was the cited justification for the officers' overwhelming use of deadly force is not visible on any of the multiple videos of the homicide,[43] nor has it ever been produced in either this consolidated case or the federal civil case.[44]

The Medical Examiner's Certificate of Death, dated March 15, 2013, lists the "manner of death" as "homicide." In October of 2013, the former Berkeley County Prosecuting Attorney presented the case to the Berkeley County Grand Jury. It was later ascertained that, as part of this presentation of evidence before the grand jury, the prosecutor also called an expert witness to testify.[45] Thereafter, the grand jury found no

_____

[42] *See* https://www.heraldmailmedia.com/news/tri_state/west_virginia/autopsy-shows-martinsburg-police-shot-virginia-man-times/article_df4e0818-ca52-11e3-ac1b-001a4bcf6878.html (last visited October 20, 2020)("The officer's stab wound later was determined to be minor, and he did not need medical attention, police said previously.").

[43] According to the petitioner, none of the videos were made part of the circuit court record below, and this Court denied the petitioner's motion to supplement the appendix record with those recordings. The videos were part of the record in the petitioner's federal action.

[44] *See Estate of Jones v. City of Martinsburg*, Civil Action No. 3:13-CV-68, 2018 WL 4289325, at *2 (N.D. W. Va. Sept. 7, 2018), *aff'd, in part, vacated, in part, remanded by Estate of Jones v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020) ("Neither party has produced the knife or explained what happened to it.").

[45] The circuit court referenced the expert witness in its "Order Denying Petition for Disclosure of Grand Jury Proceedings," stating that as part of the petitioner's argument that the grand jury's veil of secrecy should be pierced, the petitioner "refers to an expert witness who testified before the grand jury[.]" The circuit court then states that it "explicitly authorized the Petitioner—nearly a year ago—to contact the expert. Yet, to date, the Petitioner has alleged nothing more than mere unsubstantiated allegations in support of the instant Petition." There is no further information in the record as to whether the prosecuting attorney made the decision to call the expert, who apparently testified before the grand jury on behalf of the putative defendant police officers.

The petitioner's counsel's failure to contact the expert used in the grand jury proceeding, after being specifically authorized to do so by the circuit court, is inexplicable. Had counsel at least made the attempt, he would have had a far better opportunity to get copies of at least some portions of the original grand jury proceedings. West Virginia Code § 52-2-15(c)(2)(A) (2013) provides that disclosure of matters occurring before a grand jury are prohibited, except when "[w]hen so directed by a court preliminarily to or in connection with a judicial proceeding[.]" *See also* W. Va. R. Crim. P. 6(e)(3)(C)(i). As the United

32

probable cause for any criminal charges related to the March 13, 2013, homicide of Mr. Jones and did not return any indictment(s) against any of the Martinsburg police officers involved.

Following several years of civil litigation in federal court arising out of Mr. Jones's death, the petitioner on August 9, 2018, filed a "Petition/Application of the Estate of Wayne A. Jones to Empanel a Special Grand Jury for Consideration of a Complaint," in circuit court, seeking a second presentation of the facts to a grand jury which could fully and fairly review the case "untainted by contact with a prosecuting attorney and law enforcement witnesses[.]" The circuit court denied the petitioner's request, based in part on the court's determination that the request based upon the petitioner's "intention to obstruct the administration of justice." The majority seizes upon this determination as if it were the sole ground for the circuit court's decision. A close reading of the circuit court's order denying the request, however, also focuses upon the petitioner seeking an unauthorized "second bite at the apple," i.e., that the law in this State does "not guarantee people a right to make multiple presentations to a grand jury until they obtain the result they desire[,]" and the petitioner having "no legal right to ask the Circuit Court or the Prosecuting Attorney to present the March 13, 2013 shooting incident to a second grand jury in hopes of undermining the first grand jury's 'no probable cause' finding." Further, the circuit court flatly rejected the petitioner's argument that the prosecuting attorney "had abdicate[d] her duty by assuming some bias or prejudice resulting from . . . [the prosecutor's] necessary association with law enforcement officers." Had there been a hearing, as required by *Dreyfuse*, evidence as to whether a professional or personal relationship, and the extent thereof, existed between the prosecutor and the police officers could have been presented.

The majority's decision to affirm the judgment of the circuit court is inherently flawed for two other significant reasons. First, contrary to the circuit court's findings, our law does not limit the number of times[46] a private citizen or a prosecuting attorney can exercise the constitutional right to seek to have a case presented to a grand jury. Second, our criminal justice system should never be used to shield law enforcement from the consequences of brutal police misconduct, which is what likely occurred here when the

States District Court for the Southern District of West Virginia found in *Cruse v. Blackburn*, Civ. Action No. 3:17-00485, 2017 WL 3065217 (S.D.W.Va. July 19, 2017), the United State Supreme Court has placed the burden on the party requesting disclosure of confidential grand jury material "to establish 'a strong showing of particularized need . . . before any disclosure will be permitted.'" *Id*. at *1 (quoting, in part, *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983)).

[46] An effort to repeatedly seek such presentation to a grand jury certainly would be a factor in determining abuse of the judicial process. *See Dreyfuse,*___ W. Va. at ___, 842 S.E.2d 743.

investigation and presentation of this homicide to the grand jury was handled by the local prosecutor, rather than by a special prosecutor with no ties to the parties.

Contrary to the circuit court's finding that as a matter of law, the petitioner was not entitled to a second presentation of the case to a grand jury, there is nothing in the jurisprudence of this State that restricts a private citizen's right to present a case to a grand jury on the ground that the case was previously presented. Nor can the petitioner's desire to have this egregious factual scenario presented to a second grand jury by a prosecutor with no relationships to the officers be described as obstruction of justice. The circuit court found that the petitioner's request for a second presentation to a grand jury was derived from the petitioner's intention to enhance his civil claim for monetary damages. However, there is no doubt that a criminal indictment can be pursued during the pendency of a civil action and this neither constitutes an abuse of the court system nor bad motive.[47] The West Virginia Constitution expressly provides that "[t]he courts of this state shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." W. Va. Const. art. 3, §17. In *State ex rel. Miller v. Smith*, 168 W. Va. 745, 285 S.E.2d 500 (1981), we interpreted this constitutional language to mean that "[b]y application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it." *Id*. at 745, 285 S.E.2d at 501, Syl. Pt. (citation omitted) (emphasis added).

Earlier this year, this Court once again recognized a private citizen's right to present a complaint to a grand jury in *Dreyfuse*. *See* ___ W. Va. ___, 842 S.E.2d 743. In *Dreyfuse*, we held in syllabus points eight and nine:

> A private citizen's right under West Virginia Constitution art. III, § 17 to present a complaint to the grand jury upon application to the circuit court is subject to reasonable limitations to protect our judicial system from abuse.
>
> A circuit court may not deny a private citizen's application to present a complaint to the grand jury without a showing that the private citizen's conduct demonstrates a clear intention to obstruct the administration of justice. A circuit

---

[47] It is understandable that, in the instant factual scenario, the lower court was faced with a situation where civil depositions of the officers had already been taken, and could have affected their Fifth Amendment rights in a criminal proceeding. However, this particular justification relied upon at that time by the circuit court is no longer viable, as the pending federal civil action has settled; and yet the petitioner has elected to continue with this aspect of the appeal. *See supra* note 1.

court's order denying a private citizen's application to present a complaint to the grand jury *must* include such findings of fact and conclusions of law adequate for meaningful appellate review.

(emphasis added). We further established the following specific procedures for handling a private citizen's complaint to a grand jury in syllabus point eleven, which is wholly ignored by the majority:

> When a private citizen seeks to present a complaint to the grand jury, he must first apply to the circuit court. The circuit court shall then provide a copy of the application to the prosecuting attorney. Upon receipt of the private citizen's application, the prosecuting attorney may then initiate grand jury proceedings based on the allegations in the private citizen's application or he may decline to do so. If a prosecuting attorney declines to initiate grand jury proceedings, or does not act upon the application within a reasonable period of time, the private citizen may seek review of their application in the circuit court. In reviewing the private citizen's application after a prosecuting attorney declines to initiate grand jury proceedings or does not act upon the application within a reasonable period of time, the circuit court *shall* conduct an in camera hearing to provide the private citizen and the prosecuting attorney an opportunity to address the court regarding the private citizen's application.

*Dreyfuse*, ___ W. Va. at ___, 842 S.E.2d at 745, Syl. Pt. 11 (emphasis added). In reaching this decision, this Court acknowledged that

> [t]he precise scope of a circuit court's duty to protect the judicial system from abuse cannot be easily reduced to a formula. In describing a circuit court's twin duties to ensure that a private citizen has access to the grand jury while also imposing reasonable limitations to protect our judicial system from abuse, we find the following language from *Blair* to be illuminating:
>
>> This Court recognizes that the proper scope of the court's responsibility is necessarily an expression of careful exercise of judicial discretion and cannot be fully described by specific formula. . . . Each case presents a wholly

35

different set of circumstances which require careful attention so as to preserve the rights of all parties. Nevertheless, *the fundamental right . . . recognized in West Virginia Constitution art. III, § 17 may not be denied without a clear showing in the record that the . . . litigant is engaging in a course of conduct which demonstrates a clear intention to obstruct the administration of justice.*

174 W.Va. at 253, 324 S.E.2d at 396 (internal citation and quotation omitted)

*Dreyfuse*, ___ W. Va. at ___, 842 S.E.2d at 751 (quoting, in part, *Blair v. Maynard*, 174 W. Va. 247, 253, 324 S.E.2d 391, 396 (1984)) (emphasis added.)**.**

In short, pursuant to our case law, the petitioner should have been given a *Dreyfuse* hearing and the opportunity to develop a record of the prosecutor's/officers' relationship. Yet that did not occur in this case as the majority completely disregards the express procedure established in *Dreyfuse* by simply rubber-stamping the circuit court's order. *See* ___ W. Va. at ___, 842 S.E.2d at 745, Syl. Pt. 11. Instead, the majority attempts to distinguish *Dreyfuse* because the instant case involves a *second* request to present a complaint to a grand jury and *Dreyfuse* involved a first request. The majority then summarily finds that "even applying the *Dreyfuse* standard" the circuit court's order should be upheld, even though the order contains no findings of fact, only conclusions of law. At a minimum, this case should have been remanded to the circuit court with direction to reconsider the petitioner's request to present his case to the grand jury in accordance with the procedures set forth in *Dreyfuse*.[48]

The *Dreyfuse* case, however, does not fully resolve the underlying issue in the instant matter. It is troubling that the former prosecutor vociferously argued against this case being presented to a second grand jury without any hearing on the extent of the personal and/or professional relationship between the prosecutor and the officers. The petitioner argues, on appeal, the prosecutor

had ongoing criminal cases with each putative defendant. She needed each putative defendant to successfully prosecute those other pending criminal matters. To saddle those putative

---

[48] Even without the guidance of *Dreyfuse*, which was decided after the lower court entered its order in this case, the lower court also ignored the precepts set forth in the *Blair* decision. *See Blair,* 174 W. Va. at 253, 324 S.E.2d at 396.

defendants with criminal changes would cripple 1) the ongoing criminal matters, 2) the Martinsburg Police Department, and 3) public perception of law enforcement. Simply put, neither the former prosecuting attorney nor the Martinsburg Police Department can afford the grand jury returning indictments against "their" officers.

Simply put, the petitioner has a legally valid argument that has been left totally unaddressed by the majority of this Court. Instead, without even requiring a *Dreyfuse* hearing below, the majority declines to address this issue, finding that the assigned error does "not raise any error on the part of the circuit court and will not be addressed."

One would have to be tone-deaf not to recognize what is happening all over the United States with regard to black Americans who allegedly commit petty offenses winding up dead at the hand of police officers. The United States Court of Appeals for the Fourth Circuit, in the companion case, fully recognized the systemic problem that it faced and then addressed that problem,[49] stating:

> Wayne Jones was killed just over one year before the Ferguson, Missouri shooting of Michael Brown would once again draw national scrutiny to police shootings of black people in the United States. Seven years later, we are asked to decide whether it was clearly established that five officers could not shoot a man 22 times as he lay motionless on the ground. Although we recognize that our police officers are often asked to make split-second decisions, we expect them to do so with respect for the dignity and worth of black lives. Before the ink dried on this opinion, the FBI opened an investigation into yet another death of a black man at the hands of police, this time George Floyd in Minneapolis. *This has to stop*.

*Estate of Jones*, 961 F.3d at 673 (emphasis added).

The need for special prosecutors to investigate and present instances of police misconduct to grand juries, rather than local prosecutors, has been the subject of numerous legal articles. Caleb J. Robertson, Comment, *Restoring Public Confidence in the Criminal Justice System: Policing Prosecutions When Prosecutors Prosecute Police*, 67 Emory L.J.

---

[49] In *Estate of Jones*, the Fourth Circuit reversed and remanded the district court's grant of summary judgment in the police officers' favor on the basis of qualified immunity in petitioner's civil action. This federal case has since settled. *See supra* note 1.

853, 874 and 879-80 (2018) (advocating for the use of the special prosecutor to address the "apparent conflict" that local prosecutors have for which the local prosecutor should be "presumptively disqualified from prosecuting cases involving police-suspects[,]" and stating further that "[c]onsidering the power of the prosecutor over the grand jury process, a non-indictment in a high-profile case raises the question of whether the prosecutor wanted an indictment in the first place. In the context of police prosecutions, non-indictments have led some to accuse the prosecutors of both bias and misuse of the grand jury as a means of insulation from public scrutiny. Regardless of the accuracy of these accusations, when a grand jury returns no indictment, the level of control a prosecutor has over the grand jury process gives rise to the reasonable perception that the prosecutor has led the jurors, consciously or unconsciously, to vote against indictment. In the police-suspect context, such a perception seems even more reasonable when considering the numerous differences between grand jury proceedings for civilian and police-suspects.")(footnote omitted); Justin L. Amos, Note, *Who Watches the Watchers?*, 50 New Eng. L. Rev. 319, 319 (2016) ("The recent public outrage stemming from racially-charged cases in which prosecutors sought indictments against police officers represents an inherent flaw in both the grand jury system as well as the American legal system itself. This inherent flaw can be targeted through the appointment of special prosecutors who, separate from the traditional District Attorney's Office, may conduct an unbiased investigation of police officer misconduct."); Joshua Hegarty, *Who Watches the Watchmen? How Prosecutors Fail to Protect Citizens From Police Violence*, 37 Mitchell Hamline L.J. Pub. Pol'y & Prac. 305, 306-07 (2016) ("Whatever the reason for this failure to indict, it sends a message to our police officers in that their power is not being restricted and that they are allowed to use lethal force when non-lethal force, or even no force at all, might suffice. America's prosecutors are clearly not even attempting to hold police officers accountable for lives of the people that they kill and do not even appear to pretend that they are doing so. Because of this, we need to implement a system by which independent offices, not dependent upon police cooperation, and not subject to replacement by public opinion, would be tasked with investigating and prosecuting police officers accused of crimes."); Victoria Knott, Note, *Reconsidering the Use of the Grand Jury: Eliminating Prosecutorial Discretion to Indict Law Enforcement Officers*, 38 T. Jefferson L. Rev. 202, 222 (2016) ("To combat against the inherent conflict of interest that arises due to the close relationship of prosecutors and police officers, states must appoint special independent prosecutors to pursue police misconduct cases . . . . Special independent prosecutors must replace local government prosecutors in all police-involved shooting deaths and injuries of citizens. Such high profile and complex cases must have an objective voice to analyze the case from all aspects.") (footnotes omitted).

The majority, however, fails to even recognize, let alone address, the inherent conflict of interest in the context of a prosecutor making a determination on whether to present (and if so, how to present) to a grand jury a case against law enforcement officers

with whom the prosecutor works every day and upon whom that prosecutor must rely.[50] Prosecutors are afforded virtually unfettered authority to determine what evidence is presented to a grand jury, which in turn affords them virtually unfettered ability to secure the outcome they desire in any given case. Specifically, a prosecutor has discretion on whether to present a case to a grand jury, what charges to bring,[51] what documentary evidence to present, and what witnesses to present. *See* Robertson, *supra*, at 872. Because the prosecutor controls the narrative of both the law and facts of any case presented to a grand jury, "the prosecutor who wants to secure an indictment can and often does 'present a barebones and extremely skewed version of the facts' to the grand jury." *Id*. at 873. On the flip side of the coin, "[c]onsidering the power of the prosecutor over the grand jury process, a non-indictment in a high-profile case raises the question of whether the prosecutor wanted an indictment in the first place." *Id*. at 874. The bottom line, as this Court has previously recognized is that "normally there is no limitation on the character of the evidence that may be presented to the grand jury." *State ex rel. Casey v. Wood*, 156 W. Va. 329, 332, 193 S.E.2d 143, 145 (1972) (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)).

---

[50] This is particularly ironic in light of the fact that the same majority was quick to find a disqualifying conflict of interest on the part of defense counsel, despite the fact that the conflict was purely speculative—what might occur in the future. *See State ex rel. Yurish v. Faircloth*, ___ W. Va. ___, 847 S.E.2d 810 (2020).

[51] In one recent newsworthy case from Louisville Kentucky, police entering a residence for a warrantless search, fired thirty-two shots, killing a young Black woman while she was sleeping in her bed. The grand jury returned only one wanton endangerment charge (which didn't even involve the woman's death). After community outrage, a member of the grand jury requested the court to release the grand jury transcripts. The Jefferson County Circuit Court released redacted audio recordings of the Grand Jury proceeding and in the interest of public trust and transparency, permitted grand jurors who desired to speak out to do so. *See Commonwealth v. Hankison*, No. 20CR1473, Order of Arraignment and Discovery, (Ky. Jefferson Cir. Ct. Div. 13 entered September 29, 2020).

Grand jurors there said the prosecutor did not present the jury with any options other than first-degree wanton endangerment charges. One grand juror said the prosecutors did not walk the jury through Kentucky's homicide laws or explain why they decided that two other officers who shot at Breonna Taylor were justified. When the panel asked about additional charges, prosecutors told them there would not be any because they "didn't feel they could make them stick," the juror said. *See* https://www.washingtonpost.com/national/2nd-breonna-taylor-grand-juror-criticizes-proceedings/2020/10/22/c26ee432-14bb-11eb-a258-614acf2b906d_story.html (last visited October 23, 2020).

Given a prosecutor's broad discretion over grand jury proceedings, and the fact that, absent extraordinary circumstances, a prosecutor does not need much evidence to secure a grand jury indictment, it is perplexing that the prosecutor in the instant case, armed with a medical examiner's report indicating that the manner of Mr. Jones's death was a homicide, in possession of video-tape evidence that showed Mr. Jones lying on his stomach on the ground surrounded by five officers at the time he was shot twenty-two times, and without the alleged knife the officers used to establish justification for using deadly force, found it necessary to retain an expert, apparently to bolster the contention that the police conduct was not improper. As one legal commentator has noted,

> it is relatively unusual for expert witnesses to testify before grand juries. Because, as veterans of criminal trials like to say, most grand juries would indict a ham sandwich if asked to do so by a prosecutor and because hearsay and other evidence that will be inadmissible at trial is allowed, prosecutors rarely have to overexpose their cases during grand jury proceedings.

Stephen D. Easton and Kaitlin A. Bridges, *Peeking Behind the Wizard's Curtain: Expert Discovery and Disclosure in Criminal Cases*, 32 Am. J. Trial Advoc. 1, 28 (2008).[52] The logical explanation—cause of death having been determined by the coroner to be homicide—is that in light of the inculpatory evidence noted above, the prosecutor felt the need to defend the police officers' actions by offering an expert's opinion presumably that the shooting of Mr. Jones was justified. This eyebrow-raising anomaly in the presentment of Mr. Jones's death to the grand jury, especially in light of all the physical and video evidence available *but apparently not used*, supports the suspicion that the prosecuting attorney likely had a conflict of interest (apparent or actual) and exhibited bias (conscious or unconscious) in the manner in which the case was presented to the grand jury. The lower court should have held a hearing on the petitioner's motion for a special prosecutor and

---

[52] This does not mean that expert witnesses are not allowed to testify before grand juries. *See* Susan W. Brenner and Lori E. Shaw, Federal Grand Jury: A Guide to Law and Practice § 7:6 (2d ed. Oct. 2019 Update) ("Like trial juries, grand juries hear the testimony of expert witnesses. Like experts who testify at trial, these witnesses try to assist the jurors by clarifying *complex* issues. They are usually retained by the government and testify on its behalf, but defense experts have been allowed to testify before a grand jury. The use of expert witnesses does not undermine a grand jury's independence because the jurors are free to accept or reject the witnesses' testimony.") (Footnotes omitted); Fla. Stat. § 92.231 (2006) (defining expert witness as "any witness who offers himself or herself in the trial of any action as an expert witness or who is subpoenaed to testify in such capacity before a state attorney in the investigation of a criminal matter, or before a grand jury, and who is permitted by the court to qualify and testify as such, upon any matter pending before any court.").

entered an order making full findings, and this Court should have remanded this case back for such a hearing as required by *Dreyfuse*.

None of this is surprising, as local prosecutors develop close working relationships with local police officers and are often dependent upon those officers not only to investigate criminal cases, but also to act as witnesses before grand juries and petit juries. Thus,

> [f]rom a structural standpoint, police officers are prosecutors' star witnesses, central to the prosecutors' ability to earn the convictions that are so essential to their conception of public safety (and professional success, including internal promotion). Paradoxically, prosecutors may be depending on law enforcement witnesses who are breaking the law and eroding community trust, thereby undermining the very public safety they believe they are promoting. Instead of community trust, *police* trust becomes paramount.

Somil Trivedi and Nicole Gonzalez Van Cleve, *To Serve and Protect Each Other: How Police-Prosecutor Codependence Enables Police Misconduct*, 100 B.U.L.Rev. 895, 909-10 (May, 2020). As a result, the prosecuting attorney is placed between the proverbial rock and a hard place when seeking indictments for criminal conduct involving police officers:

> Prosecutors, unlike other lawyers, occupy a unique role in the legal system. They are charged with seeking convictions as well as justice, representing both the community and the legal system as a whole. When further tasked to initiate investigations against officers upon whom prosecutors rely for zealous investigation and the preservation of evidence in order to secure convictions, the inherent conflict is obvious. When placed between a rock and a hard place, what is a prosecutor to do: zealously seek an indictment against a police officer -- thereby risking that police officers will not assist the prosecutor's office with future cases -- or allow the conflict to overcome one's duty to the public and shift all blame to the grand jury which chose not to indict? When looking at the disparaging lack of indictments returned against police officers as opposed to indictments issued for almost any other person, the likely and rational conclusion is that the prosecutor chose the latter, thereby insulating police officers from indictment in order to save future cases.

Amos, *supra*, at 333-34 (footnotes omitted). Moreover, it is beyond dispute that this dilemma creates ethical issues involving apparent or actual conflicts of interests. The existence of bias may even be unconscious, and it is not unexpected that in the course of working together on a day-to-day basis, friendships form among closely allied co-workers. It is only by first recognizing this systemic problem that all branches of government can begin to solve it.

The pressing need to find solutions to the inherent flaws in our criminal justice system that fails to treat all citizens equally is of vital importance. Part of the solution exists in our law, which provides for the appointment of a special prosecutor in situations such as this. The prosecuting attorney can request that a special prosecutor[53] be appointed;

---

[53] West Virginia Code § 6B-2-9 (2005) authorizes the appointment of special prosecutors based upon a referral from the "appropriate county prosecuting attorney" as follows:

> (a)(1) If after referral to the appropriate county prosecuting attorney under subsection (v), section four of this article the Ethics Commission finds that the prosecuting attorney is, due to ill health or conflict of interest, unable to undertake a criminal investigation or prosecution, the chair of the Ethics Commission may, upon a two-thirds vote of the members of the Ethics Commission, petition the appropriate circuit court for the appointment of a special prosecutor through the West Virginia Prosecuting Attorneys Institute pursuant to the provisions of section six, article four, chapter seven of this Code for the purpose of conducting an investigation to determine whether a violation of the criminal law of this state has occurred.
>
> (2) If the West Virginia Prosecuting Attorneys Institute is unable, due to a conflict of interest of its Executive Director, to assign a special prosecuting attorney to a criminal investigation or prosecution, the chair of the Ethics Commission may, upon a two-thirds vote of the members of the Ethics Commission, petition the appropriate circuit court for the appointment of a special prosecutor through communication with the Board of Directors of the West Virginia Prosecuting Attorneys Institute.
>
> (b) A special prosecutor shall have the same authority as a county prosecutor to investigate and prosecute persons subject to this article for criminal violations committed in connection with their public office or employment which constitute felonies. No person who is serving as a prosecuting

or a motion to disqualify the prosecuting attorney from acting in a case can be made by an interested part (most often the victim or the victim's family); or, if the prosecutor fails to recognize a conflict and no motion is made, West Virginia Code § 7-7-8 (1987) provides for the appointment of a special prosecutor "[i]f, in any case, the prosecuting attorney and his assistants are unable to act, or if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act in that case." (Emphasis added). In this latter regard, this Court held in syllabus point four of *State ex rel. Goodwin v. Cook*, 162 W. Va. 161, 248 S.E.2d 602 (1978), that

> W. Va. Code, 7-7-8, authorizing a circuit judge[54] to appoint a special prosecutor where the court finds the prosecuting attorney is unable or it would be improper for him to act in a given case, does not violate Article VI, Section 40 of the West Virginia Constitution, which prohibits the Legislature from conferring on any court the power of appointment to office.

> attorney or assistant prosecuting attorney of any county is required to take an additional oath when appointed to serve as a special prosecuting attorney.
> (c) The ethics committee shall be authorized to employ and assign the necessary professional and clerical staff to assist any such special prosecutor in the performance of his or her duties.
> (d) *The special prosecutor shall be empowered to make a presentment to any regularly or specially impaneled grand jury in the appointing circuit court. The special prosecutor shall be empowered to prosecute any person indicted by such grand jury.*

(Emphasis added). The special prosecutor is expressly empowered under the foregoing statute to present matters to a grand jury. *Id.*

[54] *But see* Syl. Pt. 4, *State ex rel. Lambert v. King*, 208 W. Va. 87, 538 S.E.2d 385 (2000) ("'When a circuit judge is the moving party in the attempted disqualification of a prosecuting attorney under West Virginia Code § 7-7-8 [(1987) (Repl.Vol.2000)], he should disqualify himself under [Canon 3E of the West Virginia Code of Judicial Conduct], and follow the procedures contained in [Rules 17.01 through 17.07 of the West Virginia Trial Court Rules] for the appointment of another circuit judge to hear the disqualification motion.' Syllabus point 5, *State ex rel. Hamstead v. Dostert*, 173 W.Va. 133, 313 S.E.2d 409 (1984).").

(Footnote added).[55]

This Court has been given the opportunity to address a potential failure of justice in the proceedings below, by directing the circuit court to consider the appointment of a special prosecutor to fully and fairly present this case to a grand jury. Rather than seizing this opportunity to effect change that is long overdue, the Court chose to ignore a clear inherent problem in our criminal justice system.

For the foregoing reasons, I respectfully dissent.

---

[55] *See* Syl. Pt. 3, *State ex rel. Preissler v. Dostert*, 163 W. Va. 719, 260 S.E.2d 279 (1979) ("Before a prosecuting attorney may be disqualified from acting in a particular case and relieved of the duties imposed upon him by the Constitution and by statute, the reasons for his disqualification must appear on the record, and where there is any factual question as to the propriety of the prosecutor acting in the matter, he must be afforded notice and an opportunity to be heard.").